UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA SARTIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-603-JWD-RLB** |
| **EXXON MOBIL CORPORATION** | |

## ORDER

Before the Court is Plaintiff's Motion to Quash or Modify Subpoenas or for Protective Order. (R. Doc. 17). The motion is opposed. (R. Doc. 31).[1] Plaintiff filed a reply. (R. Doc. 42).

Also before the Court is Plaintiff's Motion to Quash or Modify Subpoenas to Plaintiff's Former and Current Employer or for Protective Order. (R. Doc. 24). The motion is opposed. (R. Doc. 30). Plaintiff filed a reply. (R. Doc. 41).

### I.  Background

On August 30, 2022, Joshua Sartin ("Plaintiff") initiated this action by filing a Complaint and Jury Demand ("Complaint"), naming Exxon Mobil Corporation ("Defendant") as a defendant. (R. Doc. 1). Plaintiff alleges that on December 22, 2020, while working as a process operator for Defendant, he received a sexually explicit video and text messages from his co-worker. On this same day, Plaintiff reported the incident to his supervisor. On January 11, 2021, Defendant began investigating. Thereafter, on January 27, 2021, Plaintiff was "terminated effective immediately." (R. Doc. 1 at 5). According to Plaintiff, he "would not have been terminated by [Defendant] but for his reporting of sexual harassment in accordance with company policy." (R. Doc. 1 at 5). Accordingly, Plaintiff filed the instant suit pursuant to Title VII of the Civil Rights Act of 1964, asserting that he "was terminated in retaliation for" reporting

---

[1] The unredacted versions of Plaintiff's Memorandum in Support and Defendant's Memorandum in Opposition, as well as the exhibits thereto are filed under seal.

the sexual harassment. (R. Doc. 1 at 5-6). Plaintiff seeks, among other things, "compensatory damages, including but not limited to damages for emotional distress, mental anguish, and suffering…" (R. Doc. 1 at 7).

On November 22, 2022, Defendant served its First Set of Requests for Production on Plaintiff. (R. Doc. 24-2). Among other things, Defendant requested that Plaintiff "make copies of and complete, sign, and return originals of the attached" medical and employment authorization forms for each health care provider and employer "identified in response to the interrogatories and request for production of documents." (R. Doc. 24-2 at 16-17).

The medical authorization form reads, in pertinent part, as follows:

> A **CERTIFIED COPY** of the entire medical records file, including but not limited to: office notes, correspondence, existing narrative reports, x-ray films and reports, CT Scan films and reports, diagnostic films and reports, etc., hospital records, lab results, HIV test result, genetic testing records, patient intake forms, initial application and information sheets, consultation reports, physical therapist reports, billing records, appointment records, progress notes, handwritten notes, nurses' notes, records of prescriptions, patient orders, pathology slides, insurance claim forms, or any and ALL records compiled by you or in your possession pertinent to the treatment of me.

(R. Doc. 17-3) (emphasis in original).

The employment records authorization form reads, in pertinent part, as follows:

> A **certified copy** of all applications for employment, resumes, records of all positions held, job descriptions of positions held, payroll reports, W-2 forms and W-4 forms, performance evaluations and reports; states and reports of fellow employees, attendance records, workers' compensation files; all hospital, physician, clinic, infirmary, nurse, psychiatric and dental records, x-rays, test results, physical examination records and other medical records; any records pertaining to medical or disability claims, or work-related accidents including correspondence, accident reports, injury reports an incident reports; insurance claim forms, questionnaires and records of payments made; pension records, disability benefit records, and all records, and all records regarding participation in company-sponsored health, dental, life and disability insurance plans; material safety data sheets, chemical inventories, and environmental monitoring records and all other employee exposure records pertaining to all positions held; and any other records concerning employment with the above-named institution.

(R. Doc. 24-3 at 2) (emphasis in original).

On December 22, 2022, in response to Defendant's discovery request, Plaintiff objected to the medical authorization form on the grounds that it: (1) is substantially overbroad; (2) requests, among other things, HIV test results, physical therapist reports, genetic testing records, and records of prescriptions, personal and private medical documents, and information that are completely irrelevant to Plaintiff's employment litigation; and (3) is disproportionate the needs of the case, as it appears to have no temporal limitation and could be used to obtain medical records from any time in Plaintiff's life. (R. Doc. 17-5 at 25-26; R. Doc. 24-4 at 22).

Plaintiff further objected to the employment record authorization form on the grounds that: (1) it seeks records, such as Plaintiff's pre-employment physical and reports of personal injuries and medical reports, which are irrelevant and out of proportion to the needs of the case; and (2) is facially overbroad, as it does not have any temporal limit. (R. Doc. 17-5 at 26; R. Doc. 24-4 at 22).

On or about April 11, 2023,[2] the parties participated in a Rule 37 discovery conference to discuss Plaintiff's responses to Defendant's discovery requests. (R. Doc. 17-1 at 3). During the conference, Plaintiff reiterated its objections to the broad, unlimited medical and employment record authorization forms.

On May 16, 2023, Defendant served notices of its intent to serve Olin Corporation ("Olin") (Plaintiff's employer from November 29, 2021, until March 26, 2023) and Shell Chemical LP ("Shell") (Plaintiff's current employer since April 2023) with Rule 30(b)(6)

---

[2] There is discrepancy as to the date the meet and confer occurred. Plaintiff alleges that the Rule 37 conference occurred on April 11, 2023 (R. Doc. 24-1 at 3), and Defendants assert that it occurred on April 14, 2023. (R. Doc. 30 at 3).

depositions for records only and subpoena duces tecum (the "Employer Subpoenas"). (R. Doc. 24-1 at 5).

On May 18, 2023, Defendant served Notices of 30(b)(6) Depositions for Records Only and Subpoena Duces Tecum on Plaintiff, which compels various primary care providers, cardiologists, hospitals, and pharmacies used by Plaintiff over the past ten years to produce "entire health and medical records" by June 9, 2023, at 9:00 am ("Medical Subpoenas"). (R. Doc. 17-1 at 4).

On May 23, 2023, Plaintiff filed the instant motions to quash the Medical and Employer Subpoenas pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 2(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, then party "must described with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id.* "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See e.g., Scioneaux v. Elevating Boats, LLC,* No. 10-0133, 2010 WL 44366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation,* No. 05-4182, 2008 WL 4833023 (E.D. La. July 2,

2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague, and ambiguous); *Panda Assicurazioni-Societa Azioni v. M/V Caribbean Exp.,* No. 97-3855, WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

Rule 45 governs discovery from non-parties through the issuance of subpoenas. As "the court for the district where compliance is required," this Court has the authority to quash or modify the subpoenas at issue. Fed. R. Civ. P. 45(d)(3). The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Additionally, the party moving to quash or modify the subpoena has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004). A court's considering of a motion to quash a third-party subpoena as unduly burdensome should be governed by the following factors: (1) relevance of the information sought; (2) the requesting party's need for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity of the description of the documents; and (6) the burden imposed. *Wiwa,* 392 F.3d at 818.

  **B.**  **Analysis**

    **1.**  **Meet and Confer**

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides that a motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action."

In addition, the Court has issued specific requirements to ensure that the parties in this action actually attempt to resolve, in good faith, the issues raised in a discovery motion prior to the filing of such a motion. The Court's Scheduling Order provides that "[a]ny motions filed regarding discovery must be accompanied by a certificate of counsel for the moving party, stating that counsel have conferred in person or by telephone for purposes of amicably resolving the issues and stating why they are unable to agree or stating that opposing counsel has refused to so confer after reasonable notice." (R. Doc. 13 at 1).

No such certification is provided. Accordingly, the Court has the right to refuse to consider the motions as submitted. Nevertheless, as discussed more thoroughly below, the record indicates that the parties have engaged in numerous discussions regarding the subpoenas at issue.

With respect to the Medical Subpoenas, Plaintiff argues that, by telephone on May 18, 2023, he expressed that he "had objections to the records sought but wanted to first address the procedural issues." (R. Doc. 17-1 at 5). Particularly, Plaintiff requested clarification that the subpoenas were for records only, as opposed to oral testimony.

By email on May 22, 2023, Plaintiff again requested that Defendant confirm that it will not hold oral depositions of Plaintiff medical providers. (R. Doc. 31-7 at 3). Additionally, Plaintiff requested that Defendant "withdraw its notices of deposition and subpoenas to his medical providers/pharmacies" because the documents sought "are not relevant to the claims and issues in this case." (R. Doc. 31-7 at 3). On the same day, Defendant confirmed that Defendant "will not hold depositions for testimony of Plaintiff's medical providers on June 9 or others in connection with the notices of Rule 30(b)(6) deposition for records only and subpoenas duces tecum." (R. Doc. 31-7 at 2). Defendant, however, refused to withdraw or modify its notices of

deposition. Accordingly, on May 23, 2023, Plaintiff filed the instant motion "in light of the short time frame before Defendant intended to serve the" Medical Subpoenas. (R. Doc. 42 at 2).

As to the Employer Subpoenas, on May 17, 2023, the parties participated in a telephone call during which they agreed that Defendant would not serve the Employer Subpoenas before May 24, 2023, while the parties attempted to reach an agreement on modified subpoenas. (R. Doc. 30-1 at 9). Plaintiff reserved his right to file a motion to quash. (R. Doc. 30-1 at 8-9).

On May 19, 2023, Plaintiff submitted a proposed redline of the Employer Subpoenas, which limited them to "payroll, benefits, and retirement records." (R. Doc. 30-1 at 6). On May 22, 2023, Plaintiff followed up with Defendant with respect to his proposed modifications. Upon receiving no response from Defendant, Plaintiff filed the instant motion to quash on May 23, 2023.

On May 24, 2023, Defendant responded to Plaintiff's email with its proposed redlines. (R. Doc. 30-1 at 4-5). Defendant also expressed that Plaintiff prematurely filed his motion to quash in contravention of their agreement to amicably modify the subpoenas. (R. Doc. 30-1 at 5). On this same day, Plaintiff responded with additional redlines and argued that its motion was not premature as he did not hear from Defendant until May 24, 2023, and Defendant had the right to serve subpoenas on May 25, 2023. (R. Doc. 30-1 at 3-4).

On May 25, 2023, Defendant agreed to some of Plaintiff's redlines and objected to others. Defendant, therefore, sent another redlined version of the Employer Subpoenas to Plaintiff.[3] (R. Doc. 30-1 at 3).

On May 30, 2023, Plaintiff stated that did not agree to Defendant's proposed modifications and that the parties seem to be at an impasse. (R. Doc. 30-1 at 2).

---

[3] The Court's analysis will disregard previous versions of the subpoenas and focus solely on the May 25th revisions.

Considering the above, it appears that the parties attempted to amicably resolve their dispute without court intervention to no avail. That said, the Court finds it appropriate to consider the merits of the motions to avoid any further inefficiencies.

### 2. Standing

Plaintiff brings the instant motions pursuant to both Rule 26(c) and Rule 45. Ordinarily, a party has limited standing to quash or modify a subpoena under Rule 45(d)(3), absent "a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it." *Howard v. Seadrill Americas, Inc.,* 2016 WL 7012275, at 2 (E.D. La. Dec. 1, 2016). But if a party lacks standing under Rule 45, they may move for a protective order seeking to limit the scope of discovery pursuant to Rule 26(c).

Nonetheless, courts in this circuit generally find that a party has standing pursuant to Rule 45 to quash a non-party subpoena that seeks financial or medical information. *See Giarratano v. Huntington Ingalls Inc.,* No. 22-88, 2022 WL 16552816, at *4 (E.D. La. Oct. 31, 2022) ("Plaintiff has standing to seek the relief requested in this case under Rule 45 because she has a personal interest in her medical records."); *Turnbow v. Life Partnrs, Inc.,* No. 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 6, 2013) (finding that a party's "accounting records and other sensitive financial information" are sufficient to confer standing to quash a subpoena issued to a non-party); *Dean v. Foods,* No. 9:21-CV-00005, 2022 WL 20112617, at *3 (E.D. Tex. Sept. 26, 2022) (explaining that private medical information constitutes a personal right or privilege that confers standing to plain tiff on behalf of the non-party medical providers); *Garcia v. Prof'l Contract Servs., Inc.,* No. A-15-CV-585-LY, 2017 WL 187577, at *7 (W.D. Tex. Jan. 17, 2017) ( "[A]n employee has a personal right to [their] personnel files, and therefore has standing to challenge a subpoena for [their] personnel files.").

Based on the foregoing, the Court concludes that Plaintiff has standing to seek the requested relief.

### 3. Medical Subpoenas

Plaintiff argues that the Medical Subpoenas should be quashed because the medical records sought (1) are not relevant to the claims and defenses in this litigation, (2) are disproportionate to the needs of the case, and (3) serve only to harass Plaintiff. (R. Doc. 17-1 at 11). According to Plaintiff, he only "seeks general, garden variety emotional distress damages" for which he does not intend to support by offering "the testimony of any medical provider or any medical records." (R. Doc. 17-1 at 10). Particularly, Plaintiff has not sought any counseling, medical treatment, or medication or the stress caused by his termination by Defendant. (R. Doc. 17-1 at 10). Nor has Plaintiff listed any medical providers or medical records in his initial disclosures, supplemental and amended initial disclosures, or interrogatory responses. (R. Doc. 17-1 at 10).

Finally, Plaintiff argues that the Medical Subpoenas are overly broad because they seek "entire medical files from a total of nine medical providers and pharmacies, unlimited in time and scope." (R. Doc. 17-1 at 10). In so arguing, Plaintiff relies on *Equal Employment Opportunity Comm'n v. Columbia Sussex Corp.,* in which the court explained that that the plaintiff's "claim for 'garden variety' emotional damages coupled with his lack of corroborating evidence does not place his mental condition in controversy, and plaintiff's objections to producing an executed authorization form will stand." No. 07-701-JJB-DLD, 2009 WL 10679322, at *3 (M.D. La. Aug. 3, 2009). Plaintiff further argues that *Williams v. United States Env't Servs., LLC,* makes clear that even if Plaintiff's mental health treatment may be relevant to

his claim for emotional distress damages, "Plaintiff's remaining medical treatment is not." No. 15-168-RLB, 2016 WL 684607, at *10 (M.D. La. Feb. 18, 2016).

In opposition, Defendant argues that the medical records sought are relevant to Plaintiff's claim for emotional distress damages—particularly, considering Plaintiff's deposition testimony indicating that there was some emotional distress related symptoms, treatment and medication received by Plaintiff. (R. Doc. 31 at 8). Defendant also relies on *Williams* to support its proposition that medical records related to a claim for emotional distress damages are relevant, "even where, as here, a plaintiff is only seeking 'garden variety' emotional distress damages." 2016 WL 684607, at *10. According to Defendant, the records sought, including records pertaining to Plaintiff's physical medical care, "could provide context or an alternative cause for the 'emotional distress, mental anguish, and pain and suffering," allegedly incurred by Plaintiff. (R. Doc. 31 at 14-15).

Resolution of Plaintiff's request to quash or modify the Medical Subpoenas requires a two-step analysis. First, the Court must consider whether the documents sought are within the permissible scope of discovery. If they are, the Court must then consider whether the medical records sought are proportional to the needs of the case.

As explained above, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discover either does not come within the broad scope of relevance as defined under [Rule 26(b)(1)] or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. "*Merrill,* 227 F.R.D. at 470 (citations omitted).

According to Plaintiff, his medical records are not relevant because he seeks "general, garden variety emotional distress damages associated with his termination by Defendant." (R. Doc.17-1 at 8). To this end, Plaintiff avers that (1) he testified that he never sought any counsel or medical treatment or took any medications for his stress caused by the termination by Defendant; (2) has listed no medical providers or medical records in his initial disclosures, supplemental and amended initial disclosures, or interrogatory response, and (3) does not intend to offer at trial the testimony of any medical provider or any medical records in support of his claim for emotional distress damages in this case.

The above facts, however, do not negate the relevancy of Plaintiff's medical records or whether they have the possibility of bearing on any issue in the case. As this Court explained in *Williams,* "[w]hen a plaintiff is seeking emotional damages, medical records related to the claim are relevant [under the broad construction of Rule 26(b)(1)] even where, as here, a plaintiff is only seeking 'garden variety distress damages.'" 2016 WL 684607, at *10 (quoting *Bacharach v. Sun Trust Mortgage, Inc.,* 2015 WL 1843007, at *7 (E.D. La. April 22, 2015) (reasoning that the "medical records may provide the defendant with an alternative explanation for the [p]laintiff's emotional distress claim.")). Plaintiff cannot have it both ways, claiming emotional distress and damages yet resisting discovery to any other causes of any such emotional distress.

Next, the Court considers whether the medical records sought are proportional to the needs of the case. The Medical Subpoenas require the production of:

> A Certified Copy of the entire medical records file (including but not limited to any mental health records), including but not limited to: Office notes, correspondence, exiting narrative reports, x-ray films and reports, CT Scan films and reports, diagnostic films and reports, etc., health history records, records of medical or mental examinations, treatment records, hospital records, lab and test results, patient intake forms, initial application and information sheets, consultation reports, correspondence or reports from other health care providers, psychiatric and psychological testing, scoring, raw data and reports or notes from

>individual evaluations or session and/or group sessions, physical therapist records and reports, appointment records, progress notes, handwritten notes, nurses' notes, records of prescriptions, pharmacy records, patient orders, billing records, insurance claim forms, functional capacity tests, and any and all other records compiled by you or in your possession pertinent to the treatment [Plaintiff].

(R. Doc. 17-1 at 4-5). The Court agrees that the Medical Subpoenas seek records that reach beyond Plaintiff's mental health treatment, as it seeks a copy of Plaintiff's "entire medical records file," including, for example, "x-ray films and reports, CT Scan films and reports," and "physical therapist records and reports." (R. Doc. 17-1 at 4).

"While mental health related to Plaintiff's emotional distress may be relevant, Plaintiff's remaining medical treatment is not." *Williams,* 2016 WL 684607, at *10. Particularly, medical records "pertaining to treatment for *purely* physical conditions" are not relevant or proportional to Plaintiff's claim for emotional distress damages. *Merrill,* 227 F.R.D. at 473 (emphasis added).

Given Plaintiff's deposition testimony and supplemental response to interrogatory No. 8, there are certain physical treatment records that bear on Plaintiff's claim for emotional distress damages. (R. Doc. 18-2 at 10-11; R. Doc. 18-4 at 5-6). Accordingly, those physical treatment records, only, are relevant. All other physical treatment records are not.

The Court also finds it necessary to limit the temporal scope of the medical records During Plaintiff's deposition, he stated that he was prescribed certain relevant medication "[p]robably ten years ago." (R. Doc. 34-1 at 6). Accordingly, the Court limits to the temporal scope to treatment occurring between 2013 and present.

Having considered the arguments of the parties, Plaintiff's deposition testimony, and discovery responses, the Court finds good cause to limit the Medical Subpoenas at issue to medical records: (a) indicating mental health and emotional distress treatment or any such symptoms, such as depression, elevated stress or blood pressure, lack of sleep / insomnia…etc., and (b) of treatment occurring between 2013 and present.

       **4.**       **Employer Subpoenas**

Plaintiff makes three arguments in support of his motion to quash the Employer Subpoenas. First, Plaintiff argues that the "information sought with respect to Plaintiff's compensation and benefits at his employers subsequent to Defendant" can be obtained through less intrusive means because "he already produced much of the information sought" and Defendant has propounded discovery "seeking much of the same information." (R. Doc. 24 at 1). Next, Plaintiff argues that the information sought from Shell, his current employer, "could have a tangible, direct, negative effect on Plaintiff's current employment and subjects Plaintiff to harassment." (R. Doc. 24-1 at 1). Third, "Plaintiff's privacy interest in" his personnel records, performance reviews and disciplinary records "outweighs any likely benefit to Defendant for purposes of impeaching his credibility." (R. Doc. 24-1 at 11).

In opposition, Defendant also argues that Plaintiff "failed to establish good cause for quashing the subpoenas and/or a protective order." (R. Doc. 30 at 9). According to Defendant, Plaintiff failed to "making a particular and specific demonstration of" the need for protection. (R. Doc. 30 at 9).

First, with respect to "performance records, disciplinary records, or performance evaluations that have resulted in changes or otherwise affected Plaintiff's] pay, benefits, or other compensation," Defendant argues that it narrowly tailored its request to performance records that bear on "its mitigation defense and back pay and front pay damages calculate." (R. Doc. 30 at 13). In so arguing, Defendant states that "an operator's performance and/or ability to qualify on their assigned units/equipment can contribute to and/or impact the operator's pay progression, a reality that reinforces the relevancy of [Defendant's] request for certain performance and discipline documents." (R. Doc. 30 at 12).

Defendant further disputes that Plaintiff has already produced much of the requested information. Particularly, Defendant states that there "may be additional information, benefits documents, and records related to compensation, retirement, and other benefits to which [Plaintiff] does not have access, but which will be relevant in evaluating [Plaintiff's] economic damages claim." (R. Doc. 30 at 13).

In reply, Plaintiff asserts that Defendant's argument that her performance and disciplinary records are relevant because his "performance and/or ability to qualify on [his] assigned units/equipment can contribute to and/or impact [his] pay progression," is merely a "fishing expedition" that Defendant hopes "could possibly have some bearing on compensation." (R. Doc. 41 at 4).

Next, Plaintiff argues that he has already produced his job applications and documents pertaining to his efforts to obtain employment with Olin/Shell. Therefore, "Defendant should not be permitted to seek them through more intrusive means of subpoenas to Plaintiff's current and previous employer." (R. Doc. 41 at 4).

To begin, there is no dispute that documents pertaining to Plaintiff's compensation and benefits are relevant, as Plaintiff seeks an award of back pay, which is meant to restore the injured worker "to the economic position in which they would have been but for the discrimination." *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 252 (5th Cir. 1974); *Jackson v. Host Intern., Inc.,* 426 Fed. Appx. 215, 222 (5th Cir. 2011) ("Back pay commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred."). Defendant may defend against and reduce an award of back pay by showing the employee failed to mitigate his damages.

Although relevant, the Court must consider whether the burden of Defendant's requests outweigh the likely benefit to Defendant.

Here, Plaintiff's first argument is that he has already produced documents pertaining to his compensation and benefits with Olin and Shell. Accordingly, the documents requested can be obtained through less intrusive means.

The Court agrees. Indeed, Plaintiff has already produced, in addition to his W-2s and paystubs, his Olin Benefits Packet, his Olin 401(k) statement reflecting the total value of his and Olin's contributions, his 401(k) closing value as of when Plaintiff left, his contribution to same, and the vesting summary. (R. Doc. 24-1 at 9; R. Doc. 24-4 at 12).

With respect to Shell, Plaintiff has already produced his bonus program eligibility, vacation entitlement, standard benefits, as well Shell's Summary Plan Description, which details Plaintiff's medical, dental, vision, EAP, tax savings programs, COBRA, disability income, survivor income and retirement benefits available to Plaintiff. (R. Doc. 24-1 at 9). Additionally, Plaintiff avers that he has "produced his first paystub from his new employment [with Shell], for the period of April 3, 2023 to April 15, 2023 and will continue to produce his paystubs as he accrues them." (R. Doc. 24-1 at 9).

Likewise, Plaintiff has produced documents responsive to Defendant's request for: "Applications for employment and any other correspondence, documents, or information evidencing the timing of Plaintiff's initial contact with Shell/Olin and Plaintiff's efforts to gain employment with Shell/Olin." Particularly, Plaintiff has produced his offer letter from Olin, as well as "87 pages of documents associated with his hiring at Shell." Plaintiff further "produced a detailed log of his job application activities" and "approximately 250 pages of documents such as

system-generated emails reflecting when and to whom Plaintiff applied for new positions following his termination from [Defendant]." (R. Doc. 24-1 at 10).

There is nothing before the Court to question the accuracy or authenticity of these documents.[4] The Court also notes that the productions by the Plaintiff in this case is significantly more extensive than that commonly seen in litigation. It is not clear that there are any deficiencies in this production beyond mere speculation.

Accordingly, Plaintiff has already produced the documents Defendant is seeking, and Plaintiff has stated his willingness to provide supplemental responses and documents as additional information becomes available. As such, the Court agrees that Defendant can (and already has) obtained the information sought through less intrusive means. *See Reed v. Madison Cnty., Mississippi,* No. 3:16-CV-51-WHB-JCG, 2016 WL 11640189, at *4 (S.D. Miss. Nov. 1, 2016) (denying the defendant's motion to compel the plaintiff to sign a personnel records authorization on the grounds that the information can be obtained through less intrusive means).

Defendant's assertion that "there may be additional information, benefit documents, and records related to compensation, retirement, and other benefits to which [Plaintiff] does not have access" is unconvincing. The Court will not allow issuance of the subpoenas based on the speculation that there "may" be documents in addition to the ample evidence already produced. *See E.E.O.C. v. S. Haulers, LLC,* No. 11-00564-N, 2012 WL 1768064, at *3-4 (S.D. Ala. May 17, 2012) ("[t]he fact that one can imagine these subpoenas leading to the discovery of admissible evidence is not alone sufficient to justify their enforcement.").

---

[4] The parties should, however, ensure that such records will not be challenged on authenticity grounds. A stipulation executed by the parties would be appropriate. If not, the Court may reconsider whether a 3rd party custodian of records should be subject to an appropriate subpoena for purposes of authentication.

Similarly, Defendant's argument that Plaintiff's performance and disciplinary records will indicate Plaintiff's pay progression also fails. At least one court in this Circuit has held that "the speculative assertion that [the] plaintiff's disciplinary records may reveal that she lost a promotion or advancement opportunities is not enough to justify" discovery. *Sanders v. Dalcraft, LLC,* No. 309-CV-0307-P, 2009 WL 1392602, at *1 (N.D. Tex. May 18, 2009). As Plaintiff points out, Defendant's request for these documents amounts to nothing more than a fishing expedition. *McDonald v. Mentor 4, Inc.,* No. 3-06-CV-0026-B, 2006 WL 8437702, at *2 (N.D. Tex. July 20, 2006) (holding that the defendants request for documents such as "time and attendance records, performance evaluations, incident or accident reports, disciplinary files, workers compensation and unemployment compensation documents, sick time reports, and termination records, amount to nothing more than a fishing expedition."). Simply put, the speculative nature of this discovery, coupled with its limited relevance in light of the records already produced and deposition testimony, supports a finding that such discovery is not proportionate to the needs of the case as set forth in the considerations of Rule 26(b)(1).

Lastly, the Court finds that good cause exists to quash the subpoena to Shell for the purpose of protecting Plaintiff from the oppressive and harassing effect of same. Numerous federal courts hold that discovery directed at a litigant's current employer can be a tool for harassment and have a direct negative effect on the litigant's current employment. *See Richardson v. BBB Group, Inc.,* No. 3:14-cv-1014, 2014 WL 1724761, at *1 (N.D. Tex. Apr. 30, 2014); *Herrera v. Easygates, LLC,* No. 11- CV-2558-EFM-GLR, 2012 WL 5289663, at *1-2 (D. Kan. Oct. 23, 2012) (finding subpoena to the plaintiff's current employer to be oppressive); *Graham v. Casey's Gen. Stores,* 206 F.R.D. 251, 256 (S.D. Ind. March 18, 2002) (explaining that the plaintiff "has a legitimate concern that a subpoena sent to her current employer under the

guise of a discovery request could be a tool for harassment and result in difficulties to her new job."). The Defendant has received sufficient information regarding the Plaintiff's employment, pay and benefits at Shell, and Plaintiff has agreed to continue to produce paystubs as they are accrued.

Considering the above, the Court finds good cause to quash the Employer Subpoenas.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Quash or Modify Subpoenas or for Protective Order, (R. Doc. 17), is **GRANTED IN PART** to the extent that Defendant seeks any records other than those related to Plaintiff's mental health treatment for her claimed emotional distress damages and medical treatment prior to 2013.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash or Modify Subpoenas to Plaintiff's Former and Current Employer or for Protective Order, (R. Doc. 24), is **GRANTED.**

Signed in Baton Rouge, Louisiana, on July 27, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**